UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN T. HAIDUL, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 4:11CV1336 ACL |
| TROY STEELE, | ) ) ) |
| Respondent, | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court for review and final disposition of a Petition for Writ of Habeas Corpus filed by Petitioner John T. Haidul pursuant to 28 U.S.C. § 2254.[1] Petitioner seeks a new trial on the basis that plea counsel was ineffective due to a conflict of interest. After reviewing the case, the Court has determined that petitioner is not entitled to relief.

## **Background**

Haidul robbed two banks. (Resp't Ex. A at 9-10, 32)[2] On August 22, 2007, Haidul forcibly stole money from two tellers at a First Bank branch. Id. at 33. During the robbery, he displayed a note advising the tellers that he had a gun and he raised his shirt to display what appeared to be the butt of a gun. Id. On September 6, 2007, Haidul forcibly stole money from a teller at a Bank of America branch. Id. at 32. He told the teller, "I have bad news, I have a gun," and he handed the teller a piece of paper that said "money" and "gun." Id.

---

[1] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this proceeding. 28 U.S.C. § 636(c).

[2] The Respondent's five exhibits, A-E, will be referred to herein as (Respt's Ex. A/B/C/D/E at __).

Haidul was charged in two separate cases with a total of three counts of first degree robbery. Id. at 9, 28. On October 3, 2008, he entered blind Alford pleas on all three counts. Id. at 10, 29. The events leading to Haidul's pleas were recounted by the Missouri Court of Appeals as follows:

> Haidul's plea counsel entered his appearance on Haidul's behalf on November 14, 2007. On January 7, 2008, plea counsel filed a motion to withdraw, alleging that Haidul had failed to pay his legal fees. The trial court granted that motion and appointed the Public Defender's Office to represent Haidul. The public defender assigned to Haidul's case subsequently filed a motion to withdraw on the grounds that Haidul was not indigent. The trial court then ordered plea counsel to show cause why he should not be reappointed to represent Haidul. Plea counsel was ordered to continue representing Haidul based on the court's factual finding that Haidul had paid plea counsel $3500 in legal fees.
>
> During April 2008, plea counsel filed several motions on Haidul's behalf, including a notice of intent to rely on a defense of alibi, a motion to suppress evidence, a motion to suppress identification, and a motion to suppress statements.
>
> On May 7, 2008, plea counsel filed a second motion to withdraw as counsel for Haidul. In the motion, plea counsel outlined his difficulties in working with Haidul. Plea counsel explained that if the court requested, plea counsel would provide letters supporting his position to the court *in camera*. In his motion, plea counsel made the following statements:
>
>> 1. Prior to and subsequent to [plea counsel] being "reinstated"; [Haidul] has bombarded [plea counsel] with letters. In these letters he has acted in every respect as if he was proceeding "pro se." These letters can be provided to the Court, in camera, upon request.
>> 2. In his letters to counsel, [Haidul] has outlined his trial and pre-trial strategy; a strategy he assumes [plea counsel] will follow.
>> 3. He has advised counsel on the law, or what he perceives to be the law applicable to his case.
>> 4. He has given counsel advice on how to cross examine the witnesses that he believes the State will call at trial.
>> 5. He has submitted what he has characterized as a "plea offer," advising the Prosecuting Attorney as to what he will accept in the way of a plea agreement. His terms are non-negotiable.
>> 6. He has summarized what he recalls the testimony of the witnesses at his Preliminary Hearing and suggested that this

testimony is false or unreliable and has suggested a strategy for counsel to follow.

7. He has intimated in his letters that [plea counsel] is not capable of defending him and has stated that he has had interviews with other attorneys who have suggested trial strategies to him. It is obvious that he has no confidence in [plea counsel] as his defense attorney.

8. Although [plea counsel] has written to Mr. Haidul and has advised him that his legal advice is not needed he persists in writing letters instructing [plea counsel] on how to proceed as his attorney. One of his suggested motions was to prohibit the State from calling witnesses that are unfavorable to him. Mr. Haidul has become a "jailhouse" lawyer.

9. When [plea counsel] initially interviewed Mr. Haidul in the Justice Center, he stated that he had funds in a 401K, that he had other funds available to him to pay [plea counsel's] attorney fees and that his Mother would assist in paying his fees. Mr. Haidul also stated that he had real property that could be used to pay his legal fees. All of these statements proved to be false. Had [plea counsel] known that Mr. Haidul did not have the ability to pay his legal fees he would never agreed to represent him. The Court has already been advised that should [plea counsel] be required to continue to represent Mr. Haidul and try each of the cases to a conclusion, that he and the firm would suffer a financial loss in excess of THIRTY THOUSAND DOLLARS ($30,000).

10. Rule 4-1.16 defines the manner in which a lawyer may terminate his representation of a client. Subsection (b)(4) states that one of the reasons for withdrawal is if ". . . the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement."

11. Mr. Haidul has engaged in a course of conduct which [plea counsel] considers repugnant and with which he has a fundamental disagreement concerning every aspect of his defense. Mr. Haidul initially suggested that his babysitter could provide him with an alibi and that proved to be false. He stated that one of his friends could provide him with an alibi and that proved to be false. He has attempted to instruct [plea counsel] on how to try his case and that is both insulting and repugnant. [Plea counsel] has a fundamental disagreement with Mr. Haidul's trial strategy. He has been advised that he had no defense to either case and that the eyewitness testimony against him is unequivocal. He has confessed. He continues to ignore [plea counsel's] advice.

12. Subsection (b)(6) states that a lawyer may withdraw when ". . . the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client." As stated in paragraph 9 herein, continued

> representation of Mr. Haidul will result in an unreasonable financial burden on [plea counsel] and the firm. Mr. Haidul's continued correspondence with [plea counsel] in which he demeans counsel's legal ability and attempts to instruct him on the law and on trial and pre-trial strategy makes any continued representation of him "unreasonably difficult" by an objective standard. [Plea counsel] submits that there has been an irretrievable breakdown of the lawyer-client relationship to the extent that any continued representation is impossible.
>
> 13. Because of the actions of [Haidul] as hereinbefore stated in paragraphs 1 through 12, [plea counsel] cannot continue to represent Haidul in good conscience. If a client fails to believe in his attorney and fails to follow what the attorney considers sound advice and continues to disrespect the attorney, there is no attorney-client relationship. Mr. Haidul is determined to continue on a course of action that [plea counsel] believes is detrimental to him and to the judicial system. [Plea counsel] submits that he is not required to follow Mr. Haidul's course of action or instructions regarding pre-trial or trial procedure to his detriment and the detriment of [plea counsel].

On June 20, 2008, the trial court entered an order denying plea counsel's motion to withdraw. Haidul's own request to have plea counsel removed also was denied after a hearing.

On October 3, 2008, Haidul appeared with plea counsel before the plea court for a guilty plea hearing. Haidul affirmed that he had sufficient time to discuss the case with plea counsel and that plea counsel had fully advised him regarding all aspects of the case. Haidul indicated he was satisfied with plea counsel's services and was prepared to plead guilty, though not admitting his guilt. Haidul admitted that the State had substantial evidence of his guilt, including video surveillance recordings of the crimes and written confessions from him. Haidul entered a blind plea of guilty to the charges and affirmed that he understood all of his constitutional rights, and that he had been advised as to all aspects of these cases. Haidul testified that he had not been threatened or promised anything to plead guilty. The State alleged that Haidul robbed one bank twice and another bank once in St. Louis County, and established a factual basis for the pleas. The court then accepted Haidul's guilty pleas.

The parties appeared for sentencing on December 19, 2008. The court again questioned Haidul about his relationship with plea counsel. Haidul again confirmed that he had sufficient time to discuss the case with his attorney before he decided to plead guilty. However, Haidul also stated that his attorney did not do everything he asked, and failed to do "many things." When asked to elaborate, Haidul declined to explain further, and then told the court he would change his answer to "he did everything." As the court's inquiry continued, Haidul said he

> received no threats or promises to enter a blind Alford plea, but that he was not
> satisfied with plea counsel's services, telling the trial court, "Your Honor, there's
> so many things, I don't even know where to begin." In response to questioning
> from the court, Haidul stated that "since the time that I hired [plea counsel], I've
> never seen him. All our communication has come through the mail. No
> communication with him at all in [fifteen] and a half months. I've been in limbo.
> I don't even know what to say today. Haidul added that "it just comes from him
> not preparing for anything. I don't have any idea what, you know, any questions
> to ask him because I'm not getting anything from him.
>
> The court sentenced Haidul to ten years of imprisonment on each of the three
> counts, to run concurrently. Haidul was remanded to the Department of
> Corrections, and later filed a post-conviction motion under Rule 24.035. in his
> amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and
> Request for Evidentiary Hearing, Haidul made three claims based on the
> allegation that plea counsel had a conflict of interest. Haidul listed the allegations
> plea counsel had made in his second motion to withdraw, and claimed that he
> would have gone to trial had there not been a conflict of interest. Haidul further
> stated that he did not feel counsel had sufficiently investigated his alibi defense.
>
> The motion court denied Haidul's claims without an evidentiary hearing. The
> motion court found that Haidul failed to allege facts showing an actual conflict of
> interest that adversely affected his attorney's performance as plea counsel. The
> motion court found, "without evidence of a detrimental act or omission by
> counsel, [Haidul] cannot prove a conflict of interest resulting in an ineffective
> assistance of counsel." Additionally, the motion court found that because Haidul
> received the minimum sentence, he was not prejudiced by the acts of plea
> counsel.

(Resp't Ex. E at 2-6, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b))

On appeal, Haidul argued that plea counsel was ineffective, because he had an actual conflict of interest, which was demonstrated by the content in counsel's motion to withdraw. (Resp't Ex. C at 10, Appellant's Brief) Haidul further argued that his plea was unknowing and involuntary because of counsel's ineffectiveness. Id. at 12. The Missouri Court of Appeals affirmed, finding no evidence of an actual conflict and that the plea was knowing and voluntary. (Resp't Ex. E at 9-10) Specifically, the appellate court found that Haidul's statements during his plea colloquy that he was satisfied with counsel's performance and that counsel had properly advised him of his legal rights and all aspects of the case undermined his conclusory statements

5

regarding an actual conflict of interest. Id. at 9. The appellate court further noted that Haidul stated he understood the nature of an Alford plea and acknowledged that the state had sufficient evidence to prove him guilty at trial. Id. The appellate court also noted that counsel had filed several motions on Haidul's behalf and ultimately concluded that Haidul's claims were refuted by the record. Id.

Several months later, Haidul, pro se, filed the present Petition for a Writ of Habeas Corpus. [Doc. 1] In it, he alleges one ground for relief--ineffective assistance of counsel based on an allegation that the conflict that developed between him and his attorney was detrimental and caused him to enter his guilty pleas under duress.

**Standard**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999); Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Owens, 198 F.3d at 681 (quoting 28 U.S.C. §2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

**Discussion**

In his first and only ground for relief, Haidul alleges he received ineffective assistance of counsel based on a conflict that developed between himself and his attorney. Haidul argues that plea counsel acted adversely to his interests after attempting to unsuccessfully withdraw from the case. Haidul states that the basis for the dispute was his inability to pay counsel more than $3,500, which Haidul adds was counsel's fault since counsel failed to obtain Haidul's release on bond. Haidul maintains that he was ultimately forced to enter a "blind Alford plea," because of the conflict he had with his attorney and the plea court's refusal to allow the withdrawal of counsel.

A defendant seeking habeas relief on the basis his trial attorney had a conflict of interest that violated his right to effective assistance of counsel must show that his attorney was influenced by the conflict in making basic strategic decisions in a manner adverse to the defendant. Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980); see also Mickens v. Taylor, 535

7

U.S. 162, 171 (2002) ("[W]e think 'an actual conflict of interest' meant precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties"). Unlike other forms of ineffective assistance claims, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Sullivan, 446 U.S. at 349-50.

"[O]nce a person has entered a guilty plea any 'subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.'" Tran v. Lockhart, 849 F.2d 1064, 1068 (8th Cir. 1988) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1976)).

The Missouri Court of Appeals used the correct federal standard in analyzing Haidul's claims of ineffective assistance of counsel. The court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Haidul testified during the plea hearing that plea counsel fully advised him of his rights, that he understood the nature of an Alford plea, that the state had substantial evidence of his guilt, and that he had not been coerced to plead guilty. During the sentencing hearing, Haidul advised the court that plea counsel had failed to do "many things," however, when the court asked Haidul what counsel had failed to do for him, Haidul was not able to answer the question rather he stated he would change his answer to "[plea counsel] did everything." Haidul's subsequent claims regarding the conflict are not credible in light of his statements under oath. Moreover, counsel filed three motions to suppress evidence, which demonstrates that counsel acted as Haidul's advocate before Haidul pled guilty. Petitioner is also unable to demonstrate prejudice in light of the fact he received the minimum sentence. As a result, the Missouri Court of Appeals' finding that Haidul failed to demonstrate an actual conflict of interest was not unreasonable.

For these reasons, Haidul is not entitled to federal habeas relief.

## Certificate of Appealability

Furthermore, Haidul has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a Certificate of Appealability. 28 U.S.C. § 2253(c). In this case, Haidul has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

## **ORDER**

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of August, 2014.